UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT SIMON,

                Plaintiff,

              -against-

MANHATTAN MINI STORAGE, LLC; EDISON PROPERTIES, LLC; JERRY GOTTESMAN; ANDY GOTTESMAN, GOTTEMAN REAL ESTATE PARTNERS; SPERBERG, DENEBERG, KAHAN, PC; NEW YORK COMMON PANTRY; STEPHEN GRIMALDI, New York Common Pantry; NEIL BOGAN, New York Common Pantry; CAROLYN HAMRAK, New York Common Pantry; JUDY SECON, New York Common Pantry; MR. WELCH, New York Common Pantry; MOHAMMED, Cafeteria Manager of New York Common Pantry; MUNICIPAL STATE OF NEW YORK; NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES; MISSIONARIES OF CHARITY, QUEEN OF PEACE HOME; NEW YORK STATE COMMISSIONER OF THE DEPARTMENT OF HOMELESSNESS; KENMORE ASSOCIATES LP; BOWERY RESIDENTS' COMMITTEE; MCKINNEY'S SHELTER; URBAN PATHWAYS, INC.; GODDARD RIVERSIDE COMMUNITY CENTER; DIRECTOR SALVATORE SNAIDERBAUR, One City Mission; UHAUL; NEW YORK LEGAL ASSISTANCE GROUP, INC; STATE OF NEW YORK; ANDREW CUOMO; BILL DEBLASIO; JAMES P. O'NEILL, JR., New York City Police Commissioner; JOHN DOE 1, NYPD ex-cop also known as "Jose"; JOHN DOE 2, NYPD ex-cop also known as "Hector"; JOHN DOE 1, NYPD Officer; JOHN DOE 2, NYPD Officer; JOHN DOE 3, NYPD Officer; JOHN DOE 4, NYPD Officer; SCOTT STRINGER, New York City Comptroller; CIVIL COURT OF THE CITY OF NEW YORK; JUDGE CAROLYN WALKER-DIALLO; Supreme Court of the City of New York; JUDGE JANE DOE, Case Number 101190-15; UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW

19-CV-5890 (CM)

ORDER OF DISMISSAL

YORK; JUDGE LOUIS L. STANTON; URBAN
PATHWAYS, INC.; CEO FREDERICK SHACK;
COO RONALD ABAD; CFO ROBERT
McPHILLIPS; DEPUTY DIRECTOR ANDREA
HARNETT-ROBINSON, Urban Pathways, Inc.;
DEPUTY DIRECTOR LISA LOMBARDI, Urban
Pathways, Inc.; DIRECTOR NANCY OLECKI,
Urban Pathways, Inc.; ARIANA SAUNDERS,
Urban Pathways, Inc.; ANDREW BRODSKY,
Urban Pathways, Inc.; NICOLE BRAMSTEDT,
ESQ., Urban Pathways, Inc.; SIRIO FLORES,
Urban Pathways, Inc.,

                        Defendants.

COLLEEN McMAHON, Chief United States District Judge:

      Plaintiff Robert Simon paid the filing fee for this *pro se* action. Plaintiff previously removed to this Court from state court four actions similar to this one: three holdover proceedings relating to his residence, and one holdover proceeding regarding his storage unit. All four actions were remanded because the complaints that Plaintiff removed involved only state law claims, and Plaintiff's having raised a defense under federal law could not make the actions removable.[1] In the order remanding the action about Plaintiff's storage unit to state court, the Court warned Plaintiff "that further duplicative or frivolous litigation in this Court, whether IFP or fee-paid, will result in an order barring him from filing any new actions without prior permission." *Manhattan Mini Storage LLC*, No. 18-CV-6027 (LLS).[2]

---

[1] The actions are *Kenmore Associates, L.P. v. Simon*, No. 12-CV-1326 (LAP) (S.D.N.Y. Mar. 7, 2012); *Kenmore Associates, L.P. v. Simon*, No. 12-CV-3943 (LAP) (S.D.N.Y. June 20, 2012); *Kenmore Associates v. Simon*, No. 12-CV-4898 (LAP) (S.D.N.Y. Aug. 16, 2012); *Manhattan Mini Storage LLC v. Simon*, No. 18-CV-6027 (LLS) (S.D.N.Y. Oct. 22, 2018).

[2] After the action was remanded, Plaintiff paid the filing fee to appeal the remand order, and the appeal remains pending. *Manhattan Mini Storage LLC v. Simon*, No. 18-3491 (2d Cir.).

2

Plaintiff names as defendants in this action numerous parties involved in those prior proceedings – including state and federal judges, Manhattan Mini Storage, LLC, property managers, Kenmore Associates, L.P., and the New York Lawyers Assistance Group (NYLAG). Plaintiff also names many individuals and entities involved with organizations dedicated to assisting homeless individuals (Urban Pathways, New York Common Pantry, Goddard Riverside Community Center), government entities and officials (the State of New York, Governor Cuomo, New York City Mayor Bill DeBlasio, the United States District Court for the Southern District of New York), and the New York City Police Department (NYPD) Commissioner and unidentified current and former officers. He asserts federal claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and under 42 U.S.C. § 1983, alleging violations of his constitutional rights, and possible state law claims.

Plaintiff annexes to his complaint civil court orders relating to his eviction from a storage unit, his "transcript of New York Police Department officers indicating fraud," his Federal Bureau of Investigation complaint form, District Judge Louis L. Stanton's "improper dismissal" of Plaintiff's removal petition and documents in connection with Plaintiff's appeal therefrom, and more.

Before the Court issued an order granting Plaintiff leave to file an amended complaint, on July 22, 2019, Plaintiff filed an amended complaint adding as Defendants Adult Protective Services, the New York City Housing Authority, the New York State Office of Temporary and Disability Assistance, and another unidentified Judge from the Supreme Court of the State of New York, New York County.[3]

---

[3] Although an amended complaint generally replaces an earlier complaint rather than supplementing it, the Court here considers both pleadings.

**STANDARD OF REVIEW**

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff's initial complaint was nearly one hundred pages long and named dozens of defendants. Plaintiff contends that John Doe police officers violated his federal rights in refusing "to permit respondent tenant Robert Simon access on March 26, 2018, to his Storage unit/space." (Compl. at 5.) Plaintiff seems to argue that he was never properly served with notices of state court proceedings involving his storage unit.[4]

Plaintiff further alleges that on January 27, 2019, Sister "Jane Doe" directed Plaintiff to sit in a chair at the Queen of Peace home in Bronx County, New York. The chair broke and Plaintiff injured his lumbar disc. (*Id.* at 6.)

---

[4] The Court noted in *Manhattan Mini Storage LLC*, No. 18-CV-6027 (LLS), that it appeared from the pleadings that on March 2, 2018, Manhattan Mini Storage LLC commenced a holdover proceedings against Plaintiff in the Civil Court of the City of New York, New York County, under Index No. LT-056730-18/NY, seeking to evict him from a storage unit after the termination of his month-to- month tenancy. On May 16, 2018, Plaintiff moved to vacate the default judgment, and on June 19, 2018, the state court granted the motion to vacate the default judgment and adjourned the matter for trial.

Plaintiff also indicates that "[t]wo ex-cops, Jose John Doe 1, 'Jose,' and Hector John Doe 2, 'Hector,' have been stalking, threatening me, and burglarizing my property and legal documents at many storage locations. Items include . . letters I sent to New York State Commissioner of the Department of Homelessness notifying that shelter psychiatry workers and case managers asked that I falsify my mental status I order to obtain permanent housing and for the purpose of obtaining through fraud funding from federal and state authorities, dating back to 2010." (*Id.* at 59.)

Plaintiff contends that although these and many other incidents are "RICO predicate acts [that] although *appearing* to be isolated events, were actually part of the overall conspiracy and pattern of racketeering activity." (*Id.* at 7) (emphasis original).

In his 138-page amended complaint, Plaintiff alleges that Defendants are:

> engaged in a pattern of racketeering activity across State lines, and a conspiracy to engage in racketeering activity involving numerous RICO predicate acts during the past ten (10) calendar years. The predicate acts alleged here are . . . Robbery, Murder, Bribery, fraud, breach of contract, and a violation of the federal Racketeer Influenced and Corrupt Organization Act ("RICO"), [and] fraud upon the Supreme Court Article III Constitution . . .

(Am. Compl., ECF No. 5, at 5.) Plaintiff invokes the Americans with Disabilities Act and various constitutional provisions, and states that the action arises under both federal question and diversity jurisdiction, though it appears that Plaintiff and many defendants are citizens of New York. He seeks billions of dollars in damages.

## DISCUSSION

**A.     Civil RICO Claims**

"The civil RICO statute, 18 U.S.C. § 1964(c), specifies that '[a]ny person injured . . . by reason of a violation of [§ 1962] may sue therefor . . . and . . . recover threefold the damages he sustains.'" *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 176 (2d Cir. 2004)

5

(quoting 18 U.S.C. § 1964(c)). In order to state a claim for relief under § 1964(c), Plaintiff must allege that Defendants violated § 1962. This requires Plaintiff to plead that he was injured by "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A pattern of racketeering activity must involve "at least two predicate acts [of racketeering activity] committed within a ten year period." *Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308, 310 (2d Cir. 1997) (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237 (1989)); *see also* 18 U.S.C. § 1961(5).[5] "To establish the existence of a RICO conspiracy, a plaintiff must prove 'the existence of an agreement to violate RICO's substantive provisions.'" *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) (quoting *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997)) (internal quotations omitted).

In his initial complaint, Plaintiff alleged that many unrelated disparate events, though "appearing to be isolated events, were actually part of the overall conspiracy" (Compl. at 7). In his amended complaint, Plaintiff asserts, without further factual development, that "the predicate acts alleged here are . . . Robbery, Murder, Bribery, fraud, breach of contract, and a violation of the federal Racketeer Influenced and Corrupt Organization Act ("RICO"), [and] fraud upon the Supreme Court Article III Constitution . . ." (Am. Compl., ECF No. 5, at 5.) The allegations in Plaintiff's initial and amended complaints are insufficient to plausibly plead an agreement between defendants to violate RICO. The Court therefore dismisses Plaintiff's RICO claims for failure to state a claim on which relief can be granted and as frivolous.

---

[5] Racketeering activity is defined in 18 U.S.C. § 1961(1) and includes mail fraud, as defined in 18 U.S.C. § 1341, and wire fraud, as defined in 18 U.S.C. § 1343.

**B.     Immunity**

    **1.     Judicial Immunity**

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Plaintiff's claims against District Judge Louis L. Stanton and state court Justice Carolyn Walker-Diallo, Justice Jane Doe, Case Number 101190-15, and Justice "Doe" from the Supreme Court of the State of New York arise out of their judicial acts in his cases pending before them. Plaintiff's claims against them must therefore be dismissed based on judicial immunity.

    **2.     Sovereign Immunity**

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's § 1983 claims against the State of New York and Governor Cuomo are therefore barred by the Eleventh Amendment and are dismissed.

Moreover, the Civil Court of the City of New York and the Supreme Court of the State of New York are part of the New York State Unified Court System, which "is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." *Gollomp*, 568 F.3d at 368. The Court therefore dismisses Plaintiff's claims against the Civil and Supreme Courts of the City of New York based on Eleventh Amendment immunity.

The United States District Court for the Southern District of New York is also not amenable to suit under § 1983, and the Court dismisses Plaintiff's claim against this defendant. *See Pietrangelo v. U.S. Dist. Court Vermont*, 223 F. App'x 20 (2d Cir. 2007) (holding that the sovereign immunity of the United States barred plaintiff's suit against the District Court); *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) ("Consent to suit 'must be 'unequivocally expressed' in statutory text, and cannot simply be implied.") (citation omitted).

## C.   Constitutional Claims

### 1.   State Action

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Because a claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage," 42 U.S.C. § 1983, private parties are not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

8

Many of the defendants in this action are private parties or entities not alleged to have been acting under color of state law, including Manhattan Mini Storage, LLC; U-Haul, Edison Properties, LLC, NYLAG, Jerry Gottesman, Andy Gottesman, Gotteman Real Estate Partners, Sperberg, Deneberg, Kahan, PC., and parties identified as "ex-cops, Jose John Doe 1, 'Jose,' and Hector John Doe 2, 'Hector.'"

Moreover, because providing housing is not the exclusive province of the government, district courts have concluded that entities providing shelter to the homeless are not engaged in a public function. *See, e.g., George v. Pathways to Housing, Inc.*, No. 10-CV-9505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y. June 29, 2012) ("It is well established that the provision of low-cost supportive housing is not a 'public function.'"). Because the complained of conduct does not constitute state action, Plaintiff cannot state a claim under § 1983 against Defendants Urban Pathways, Inc, Goddard Riverside Community Center, New York Common Pantry, Missionaries of Charity, Queen of Peace Home, Bowery Residents' Committee, McKinney's Shelter, or One City Mission or their employees (Salvatore Snaiderbaur, Frederick Shack; Ronald Abad; Robert McPhillips; Andrea Harnett-Robinson, Lisa Lombardi, Nancy Olecki, Ariana Saunders, Andrew Brodsky, Nicole Bramstedt, Esq., Sirio Flores, Neil Bogan, Carolyn Hamrak, Judy Secon, Mr. Welch, and "Mohammed"). The Court dismisses Plaintiff's § 1983 claims against these individuals and entities for failure to state a claim on which relief can be granted and as frivolous.

### 2. Department of Homeless Services

Plaintiff names the New York City Department of Homeless Services (DHS) and its Commissioner as Defendants in this action. As an agency of the City of New York, the DHS is not an entity that can be sued in its own name. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the

9

name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

Plaintiff's claims against the DHS Commissioner, Comptroller Scott Stringer, and NYPD Commissioner James O'Neill in their official capacities constitute claims against the City of New York. To state a § 1983 claim against a municipality, such as the City of New York, a plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Plaintiff fails to plead facts, however, showing how any policy, custom, or practice of these supervisory officials or the City of New York caused the violation of his constitutional rights.

Plaintiff thus fails to state a claim under § 1983 against the City of New York or against the DHS Commissioner, Comptroller Scott Stringer, and NYPD Commissioner James O'Neill in their official capacities.

### 3. Personal Involvement

Plaintiff also fails to state a claim against Comptroller Scott Stringer, and NYPD Commissioner James O'Neill in their personal capacities. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). A defendant may not be held liable under § 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). An individual defendant can be personally involved in a § 1983 violation if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[6]

Plaintiff does not allege any facts showing how Defendants Comptroller Scott Stringer, or NYPD Commissioner James O'Neill were personally involved in the events underlying his claims. Plaintiff's claims against Comptroller Scott Stringer and NYPD Commissioner James O'Neill in their personal capacities are therefore dismissed for failure to state a claim on which relief may be granted.

Plaintiff also fails to state a claim against the DHS Commissioner in his personal capacity. Plaintiff states that he sent a letter "to New York State Commissioner of the Department of Homelessness notifying that shelter psychiatry workers and case managers asked that [he] falsify [his] mental status in order to obtain permanent housing and for the purpose of obtaining through fraud funding from federal and state authorities, dating back to 2010." (Compl. at 59.)

Plaintiff labels the actions of "shelter psychiatry workers and case managers" as "fraud" but he does not plead any facts suggesting that they acted with anything other than a good faith belief that he qualified for such benefits. Whether or not these shelter psychiatry workers and case managers were mistaken about Plaintiff's qualification for such housing, Plaintiff has not

---

[6] "Although the Supreme Court's decision in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," the Second Circuit has not yet examined that issue. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

11

pleaded facts showing that either the Commissioner of the shelter staff violated Plaintiff's constitutional rights.[7] The Court therefore dismisses Plaintiff's claims against the DHS Commissioner in his personal capacity.

4. Police Officers

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." Amdt. 14, § 1. The Due Process Clause of the Fourteenth Amendment was enacted "to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney v. Winnebago Cnty. Dep't of Soc. Svcs.*, 489 U.S. 189, 195-96 (1989) (holding that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests").

The Second Circuit has recognized two exceptions: First, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 200. Second, the government may assume some obligation when it affirmatively creates or increases the danger to the plaintiff. *See Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993).

Plaintiff asserts that John Doe police officers violated his federal rights in refusing "to permit respondent tenant Robert Simon access on March 26, 2018, to his Storage unit/space." (Compl. at 5.) Because Plaintiff has no constitutional right to affirmative government aid to

---

[7] Plaintiff has not alleged that he was denied access to appropriate services because he had been wrongly regarded as having a mental impairment. *See, e.g., Jenkins v. New York City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 512 (S.D.N.Y. 2009). Instead, he alleges that he was inappropriately offered housing because he was wrongly regarded as having a mental impairment.

resolve his disagreement with a private party, such as Manhattan Mini Storage, these allegations fail to state a claim under § 1983 that police officers violated his constitutional rights.

### D. Americans with Disabilities Act

Plaintiff invokes the Americans with Disabilities Act (ADA) and alleges that he suffers from sleep apnea and other medical issues. Title II of the ADA prohibits any public entity from discriminating against "qualified individual[s]" with disabilities "in the provision or operation of public services, programs, or activities." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Plaintiff does not include any facts in the complaint about which of the many defendants violated his rights under the ADA or what occurred. Plaintiff therefore fails to state a claim on which relief can be granted under the ADA.

### E. State Law Claims

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

**F.     Leave to Replead**

The Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Although Plaintiff's fee-paid complaint gives little indication that a valid claim might be stated, the Court grants Plaintiff leave to replead within 30 days of the date of this order. Many of Plaintiff's claims, however, cannot be reasserted, including his claims against state and federal judges, the State of New York, and the United States District Court for the Southern District of New York. Plaintiff also must not reassert claims under § 1983 against private parties or entities that are not acting under color of state law.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff's amended complaint fails to state a claim on which can be granted and asserts claims that are frivolous or are brought against defendants who are immune from suit.

The Court grants Plaintiff leave to replead within 30 days of the date of this order. Plaintiff must submit the second amended complaint to this Court's Pro Se Intake Unit within thirty days of the date of this order, caption the document as a "Second Amended Complaint," and label the document with docket number 19-CV-5890 (CM). The Clerk of Court is directed to include a Second Amended Complaint form with this order. No summons shall issue at this time for any Defendant.

If Plaintiff fails to submit a second amended complaint within the time allowed and does not show good cause to excuse such failure, the Court will enter a civil judgment consistent with this order and direct the Clerk of Court to terminate this matter.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: September 11, 2019
       New York, New York

                                  COLLEEN McMAHON
                                Chief United States District Judge